Please call the first case. Case number 10-3361, People v. Sidney Johnson. And please remember these are recording devices. You need to keep your voices loud so we can hear you as you're competing with the traffic on LaSalle Street. Identify yourself for the record, please. Yes. Good morning, Your Honors, and may it please the Court. My name is Jennifer Bontrager and I represent Sidney Johnson. Although there are seven substantive issues in the briefs, I plan to focus my argument this morning on two issues in particular, both of which relate to actions the trial judge took that changed the question presented to Sidney Johnson's jury. Those are the second and third issues in the briefs, and I'll argue them in reverse order. Of course, I'll answer any questions Your Honors have about the remaining issues, and I'd like to reserve a few moments for rebuttal as well. The question for Sidney Johnson's jury was supposed to be who killed Danny Santoyo, in particular whether Sidney Johnson killed Danny Santoyo. But the trial judge prevented the jury from answering that question, first by refusing to allow the defense to introduce evidence that another individual had confessed to the crime, and then by sui sponte instructing the jury on second-degree murder over the defense's objection, having decided for himself that Sidney had killed Danny, and leaving the jury to decide only whether Sidney was justified in doing so. And that question was wholly at odds with Sidney's plea of not guilty, his theory of defense, which was that Sidney did not and could not have stabbed Danny. To that end... Well, Counsel, do you think that the Chamber's requirements were met sufficiently in order to allow the witnesses... I mean, the inculpatory evidence to come in? Absolutely, Your Honor. All four of the Chamber's factors are present here. The first factor, whether the confession was made or statements were made to close acquaintances shortly after the events is met, according to defense counsel's motion in limine. Lewis, Rookie, Johnson... But where is the evidence of that? It's contained within the motion in limine and the brief arguments that the judge allowed on the motion in limine. Once the judge ruled that that could not be admitted, it couldn't come in, but defense counsel's motion in limine specifically named three family members in particular to whom Rookie had confessed, contains the gist of his confession, which was, and I don't have the quote in front of me, but something along the lines of, I saw a big Hispanic dude beating up Sidney, so I ran up and I stabbed him. The motion also noted that it was within hours of the stabbing that this confession was made, and again, those three specific names of family members, and then said that there were additional family members and friends who had heard this confession as well. How is that information given to the trial court? Was there an offer of proof? It's contained within the motion in limine. The motion in limine is not an offer of proof. I'm trying to figure out so exactly what kind of evidence should have been presented to the court in order for him to have been convinced that that evidence was actually in existence. Well, as a threshold matter, Your Honor, attorneys are officers of the court, and any representation made to the court is tantamount to an offer of proof. But counsel, was there a request made either for formal or informal offer of proof to the trial court? No, there was not. Why not? The judge did not request one. Isn't that counsel's prerogative to ask for if an offer of proof can be made once the evidence is determined by the trial court not to be admissible? After, I'm not aware of any requirement that counsel, in fact, counsel is not required to continue to press an issue after a trial judge has made a ruling. He's only required to ask the judge to bring forth whatever he has. If the trial judge shuts down that request, he's not required to continue to basically beat his head against a wall. So if I understand you correctly, if the trial court refuses to allow evidence, then the responsibility or obligation is on the trial court to have the offer of proof? I'm not sure that there's a requirement at all to have an offer of proof. Defense counsel's representations to the court were tantamount to an offer of proof already within the motion. Once the judge said, no, I don't find the chamber's factors are met, it's not coming in, let's move on, trial counsel was under no obligation to continue to try to revisit that issue. The reason an offer of proof should be used is because if a trial judge is not going to let in certain testimony and if you have the witness available and you put the witness on as just an offer of proof, then an appellate court like us can see what the evidence really is. Because otherwise, you know, just because a lawyer puts it in a motion in limine that doesn't mean that the witness is going to testify to those facts. Well, counsel had every reason to believe that the witnesses would testify to those facts. But didn't in fact Lewis deny the stabbing subsequently? He was asked as a matter of impeachment whether he had made those statements. He denied it. And so there was no offer of proof. And the testimony that came before the jury was that he denied the stabbing. Which they were not allowed to consider for any substantive reason, only for impeachment. Yet that's correct, that didn't come in. So how can you say then that that first factor has been, that first element has been satisfied in chambers? Well, there's no basis for, there's no basis in the record for calling defense counsel, for suggesting that defense counsel was lying to the court. He put forward this matter as if it were an offer of proof. He put it in his motion. He discussed it to the extent that the trial judge would allow him to do so before the judge shut it down and said, nope, not that, we're moving on. He again, he put it in his post-trial motion, suggesting that he in fact still believed that those witnesses would have testified consistent with his representations in that pretrial motion. So there's no. So what you're doing is you're asking us to provide a new rule. The rule is that instead of using an offer of proof, now lawyers can do that on motions and limited and no offers of proof are needed. No, I'm not asking for a rule like that at all. I'm simply asking your honors to find that in this case, that first factor was met based on counsel's representations in his motion in limine. And to be clear, not all four chambers factors have to be met. If your honors find that that factor is a little bit squishy, it's not quite what your honors prefer, we still have two, three, and four. The state has conceded that the third and fourth chambers factors are met, that the statements were inculpatory, that they were against Rookie's penal interest, also that he was present for cross-examination. And we have the second factor, that whether it was corroborated by any evidence, there's substantial evidence that corroborates the idea that Rookie stabbed. What was the substantial evidence? We have, first, Miguel Soria's testimony, defense witness Miguel Soria's testimony. He's an independent witness. He testifies that he sees, he hears and then starts to see this fight going on. He describes a younger, smaller man than Sidney come running up and start stabbing at Danny Santoyo. But based on the verdict, can't we just assume that the jury disregarded Mr. Soria's testimony? No, your honor. I believe the jury was very confused based on the instructions that they received in this case. No, but I'm talking about the testimony, not the instructions, the testimony. Based on the testimony and based on the verdict, doesn't it seem from the record that the jury disregarded Mr. Soria's testimony? No, I don't think that's the case at all, your honor. And what do you base that on? Well, I'm basing that on the jury's confusion based on, as I was saying earlier, they were supposed to be allowed to decide whether Sidney killed Danny Santoyo. The trial judge, at the close of evidence, and this shifts into the other matter, at the close of evidence decided on his own motion to instruct Sidney's jury on second-degree murder and self-defense over the defense objection. That was inconsistent with the theory of defense. That was inconsistent with the evidence they'd heard. That jury could not have but been confused. But we're not talking about self-defense. What we're talking about is maybe another party contributing to the demise of the victim. Absolutely. And you said that Mr. Sororia's evidence corroborated. But based on the verdict, can't we assume that the jury disregarded Mr. Sororia's testimony? I mean, I think, like I said, I believe they were confused. Maybe they did disregard it because they were so confused about the instructions that they received. They were confused having heard consistently throughout the case, the defense building this case that Sidney did not do it, that he physically could not have been responsible for that stabbing. They hear, you know, through cross-examination, through opening statement, then they hear affirmative evidence corroborating this idea that Rookie would have been the stabber. And then they get these other instructions that suggest, in fact, that Sidney has changed his plea, that there's something else going on here. They could not have but been confused. Perhaps they did end up rejecting that testimony, but that's not a reason that would support allowing the judge to keep out exculpatory information that another individual had been responsible for that stabbing. And Miguel Sororia's testimony is not the only evidence corroborating those statements from Rookie. We also have Dawn Godfrey's statement to the defense investigator where she says that Rookie was right up in the fight. And we also have the physical evidence, the physical placement of those wounds on Danny Santoyo's body. One of the few things that all the witnesses agree on is that Sidney fought with his right hand. Everybody also agrees that Danny Santoyo is a large man. He's bigger than Sidney. The wounds that Danny Santoyo suffered are on the right. They were also rustling and tussling and tumbling on the ground, right? No one was static. So, you know, the wounds could have been inflicted from any of a variety of positions, isn't that true? It's unlikely given the testimony. What little testimony is consistent is that at the point that the stabbing occurred, Sidney was flat on his back. Danny Santoyo was on top of him. Danny was a large man, and he was beating on Sidney. Sidney was fighting with his right hand. The fatal wounds are down the right side of Danny Santoyo's body. They're on his right armpit. Which would have been to Sidney's left. Correct. And Sidney could not have reached all the way around that frame to have inflicted those wounds. Well, how do you explain the frontal wounds, the wounds that were on the front part of the body? He didn't have any significant wounds on the very front. But there were wounds to the front part of the body. There were some scratches. I'm sorry, there were some scratches here. The front part of his body wounds, though, were the result of treatment from EMTs that cut into his chest to treat him. But the fatal stab wounds are along the right side of his body, where Sidney could not have reached during that fight. Well, didn't Dr. Filikens testify that there was two wounds to the chest, that there was two stab wounds to the left shoulder, including the lungs and the liver area? To the left shoulder? No, to my understanding of Dr. Filikens' testimony, there were scratches about here on Danny's left side, but there are no other. I believe the doctor testified that there were wounds. He didn't refer to them as scratches. He referred to them as wounds. He might have called them incision wounds, but they are not. To my recollection of that testimony, I don't have it in front of me. If there were injuries to the lungs and the liver, that's a lot more than a scratch. Absolutely, and that's because those came from the wounds on the right side. And we're talking about the front wounds. Those are not. The fatal wounds are to the right side of Danny Santelio's body. Kevin, all of your evidence concerning the wounds were heard by the jury. Arguments were made on those. The juries made credibility determinations and decided who they would believe and who they would not believe. Well, to some extent, yes. But, in fact, the judge in this case stepped in at the end of the evidence and decided took a key credibility determination out of the jury's hands. He decided at the close of evidence that he believed the state's witnesses and that he did not believe the defense witnesses and decided for himself that Sidney had stabbed Danny and decided to instruct the jury on second-degree murder and self-defense over the defense objection, wholly at odds with the defense that was presented, at odds with the evidence that was presented. And, as I said before, could only have confused Sidney's jury to have heard a defense consistent with he didn't do it, he couldn't have done it, and to then be instructed, well, you know, second-degree murder instructions shift the plea. They suggest to the jury, they demonstrate to the jury that the defendant has acknowledged that he is now responsible for that death, but that he was justified in doing so. That's inconsistent with the plea of not guilty, that's inconsistent with his right to present a complete defense, and it's inconsistent with the evidence presented and argued to that jury. So they received all these instructions placing a burden to present evidence of mitigation on Sidney that he never took on himself, that he did not present, and that was inconsistent with everything he presented, all the evidence, all the arguments. There was simply no basis for giving those instructions, and it deprived Sidney of a fair jury trial. And I believe I'm out of time or awfully close there, too. Thank you. All right, counsel. Good morning, Your Honors. Good morning. And I apologize. Keep your voice up, please. Yes, I will. My name is Judy DeAngelis. I'm an assistant state's attorney representing the people of the state of Illinois. I will begin, then, with the third issue regarding the chambers issue. The people would maintain that the four factors and fact were not met by the defendant and the trial court properly denied the motion in Lemonade to admit Rookie's alleged confession as substantive evidence. Of course, the ---- What about Soria's testimony? Your Honor, Miguel Soria's testimony does nothing to change that fact. Miguel Soria ---- You said he saw? I'm sorry? He said that he saw? He never even identified anyone out on the street that day. He could not identify defendant. He could not identify anyone. He never said that there was a half-braided man out on the street. He was playing with his children. What did he say, then, that he saw a black man? He said that there was one Hispanic man on the opposite side of the street. There was a Hispanic man arguing with three male blacks.  No one had a bat. James had a bird. What did he say about Lewis stabbing the victim? He said he saw another black man running from the west of Marshfield with a knife, and he started poking the Hispanic man. So he saw a black man poking an Hispanic man with a knife? Yes. That's Soria's testimony. Why is that not sufficient to satisfy number one? Well, number one being, I think, my number one in the chambers, if you're talking about corroborated by other evidence, it's insufficient evidence to allow his statement in. First of all, all confessions are self-incriminating and against the declarant's interest. And spontaneous, there was absolutely no offer of proof or anything that was presented by this defense attorney. I know the defendant says that he was somehow stopped by the trial court to bring forth any evidence regarding these alleged other people that Rookie confessed to. We can't forget also that Rookie vehemently denied during cross-examination that he ever said anything to anyone, and in fact his family was pressuring him and at one point beating him up to say that he was indeed the stabber. Defendant had the right to cross-examine. The impeachment evidence was sufficient. It must also be remembered that defense attorney never presented any rebuttal evidence. So you've got Lewis saying on one hand that he stabbed him, on the other hand that he didn't, so he's impeached. But there is no, how is Saria's testimony impeached? Saria's testimony is just contradicting the other testimony that was presented. Which was also contradicting itself. It was contradicting Dawn's testimony, James' testimony, Megan's testimony, and Rookie's testimony itself. And whether there is any slight, slight corroboration, there has to be some other evidence. The case that was cited by the defendant, it does not say a low threshold, people versus Tenney, it says there has to be some other evidence of corroboration and the trial court properly found that there was just simply insufficient evidence by this person who was outside playing with his children, talking with his wife, and not paying attention, and not even able to possibly identify anyone out on the street. Even in the trial courtroom, he could not say the defendant was even out on the street that day. That is simply insufficient evidence for corroboration. Isn't his testimony consistent with the other witnesses, other than Dawn's, who said that they didn't see a knife. They didn't see Mr. Johnson have a knife during the altercation. They didn't see a weapon. James did not see a weapon. Dawn did see a weapon. She saw horns, blade, knife. Does Mr. Soria's testimony corroborate James' testimony as well as Megan's testimony? Well, he said that he didn't see a knife, but that is insufficient corroboration. Again, I mean, this is, Megan, after the stabbing, saw the knife, saw the defendant running down the street with the knife in his hand. Miguel Soria said he never saw a knife. So, again, the trial court properly found that that was insufficient. But Megan only saw the knife when Sidney was running away. Correct. But she also saw Sidney below Daniel on the street fighting for multiple minutes, and she saw the jabbing motion. Now, she may not have seen the blade. You have to remember, Daniel Santoya was a much larger man on top of Sidney Johnson. And for whatever reason, maybe no one saw the knife, and Dawn was able to see it only because she was so close to the fight. But neither Dawn or Megan were even able to identify Sidney when they looked at the photo array. One of them was saying that all black people look alike to her. And Dawn denied saying that. That was the defense investigator who prepared her a report a month after she interviewed her, never took any notes during the interview. She said that the photos were grainy, it was getting dark, that there were black men in the photos, and she did not want to misidentify. She could not identify, but she was certainly able to identify defendant at the lineup immediately after he was arrested, as did Megan. And James had known defendant since he was nine years old, so he was certainly able to identify defendant as the stabber at the scene of the crime. Now, the record appears to be absent in terms of where this knife came from, correct? Well, Rookie testified in front of the grand jury that defendant carried around that knife all the time. He knew defendant to have owned the knife. We can't forget, there were multiple stab wounds. Rookie, James, they were all near the fight. They ran away when the stabbing occurred. Daniel and defendant were the only ones that were on the street at that time, and Daniel stood up bleeding as white as a ghost, and he had just been fighting with defendant. Megan saw the stabbing. She saw it seven, eight, nine times, she said. The forensic evidence says he was stabbed multiple times, and in fact, regarding the forensic evidence, there was on pages KK 56 through 65, statements from the forensic medical examiners stating that, in fact, that Daniel was stabbed on his chest. He was stabbed on the left side. Defendant would have this court believe that the defendant was laying on the ground, that Daniel was on top of him, and at no time did Daniel ever possibly, as you were saying, tussle or move around. He was stabbed in his chest area. He was stabbed on his left side. It was not an impossibility. Defendant attempts to persuade this court to say that it was impossible for Sidney Johnson to have been the stabber. It was not impossible, and the forensic evidence clearly supports that. With regard to the instruction, people would state that People v. Wilmington has definitively shown that the instruction that was given by the trial court sui sponde regarding the second degree murder was entirely proper. The evidence supported the instruction. The trial court believed, and as he stated, he was taking it upon himself, but certainly the trial court believed that he had the right to do that. It must be remembered that this defendant was not admitting any guilt. The jury had to find him guilty of first degree murder before ever finding whether or not a mitigating factor was existing. In fact, they did find that there was a mitigating factor, and defendant was then found guilty based on the jury's assessment of the witness's credibility and weight to be given their testimony. They found that defendant was, in fact, properly found guilty. Wilmington is not applicable to the facts of this case. And we would disagree, even though Wilmington does deal with whether or not a trial court properly questioned a defendant as to whether or not it was his decision to tender the second degree murder instruction. In that case, it was a second degree lesser mitigated versus a lesser included, which, as this court is well aware, are two completely different issues, as the Illinois Supreme Court has stated, because you are not admitting guilt when that lesser mitigated instruction, second degree instruction, is given. So your argument is that the language in Wilmington with regard to the instruction is not dicta? I would argue that it is not dicta. In the people's brief, they did cite people versus Garcia, and the language regarding whether or not a trial court can tender the instruction sua sponte was, in fact, affirmed by the Illinois Supreme Court. The question in Wilmington was whether or not the defense or the trial court had asked for the second degree murder instruction. And regardless, the Illinois Supreme Court found that not only was it not harmless error or plain error, it was not error whatsoever because, again, it was a second degree instruction lesser mitigated versus lesser included, where with a lesser included, the defendant is, in fact, stating that he is admitting his guilt. But with a lesser mitigated, the jury still must prove or must find that the state has proven all of the elements of first degree murder before going to the second degree. Was that the issue that was raised in Wilmington? No. The issue that was raised was, in fact, whether or not the trial court had properly inquired of defense counsel and of defendant under Brock Smith and then people versus Medina. And the statement that the Illinois Supreme Court made prior to even talking or discussing that argument is, in fact, we feel very pertinent in this case and that this court should review that as the Illinois Supreme Court affirming that not only can a lesser included instruction be tendered sua sponte, but a lesser mitigated instruction can certainly be tendered sua sponte, especially where there is no admission of guilt. And it must also be remembered that society has the right to have a defendant proven guilty based on the evidence, as does a defendant. And it is not society's intention to have a defendant proven guilty of anything but what the evidence proves. And here the evidence proves. What effect does Wilmington have on this case? We would say that Wilmington has complete control of this case based on the Illinois Supreme Court's decision that it was not even error in that case for the trial court to have failed to admonish or determine whether or not the defendant had indeed requested that instruction. It didn't matter because there was no admission. There was no change in his plea, just as in People v. Ramey when they stated Rocksmith Medina had no relation in regards to a trial court having the authority, the discretion. It's a separate issue. A trial court has the authority to give a sua sponte instruction versus a defendant's right to have that instruction tendered. They are different. And the Illinois Supreme Court has spoken that the trial court indeed has that right to do that, regardless of defendant's arguments here that he was somehow prevented from presenting his plea of not guilty. Not so at all. The jury had to find him guilty of first-degree murder before even examining the mitigating factor according to the instructions that they were given. And we must assume that the jury followed their instructions. Your Honors, if there's no other questions on any other issues. And you don't think, as your opponent has argued, that by this court on its own giving that instruction, which required a finding of first-degree murder, you know, of murder, that that therefore communicated to the jury, you know, that the defendant was guilty of murder in the first place, even though his thought that he was in self-defense was erroneous. And therefore biased the jury against the defendant. Your Honor, the Illinois Supreme Court has already stated that that is not a consideration that need be given. The trial court has the right on slight evidence to give this instruction sua sponte. And again, that is a separate issue. The trial court's discretion is separate from whether the defendant has decided to plead guilty or plead self-defense. It is a separate issue. And the trial court under these circumstances, under this evidence, had the right under the law, and Wilmington has affirmed that, that he had the right to tender the second-degree murder instruction based on the slight evidence that was presented at trial. Your Honors, if there are no further questions, we would ask that based upon our brief and our arguments today that the trial court's, excuse me, the jury's verdict of guilty of second-degree murder be affirmed. Thank you very much. Rebuttal. I have just a few quick points for Your Honors. First, regarding the Chambers issue, the corroboration requirement is in fact low. The Supreme Court in Tenney said so. And they also went on to say, as did the United States Supreme Court in Chambers, that if there is any question, if the evidence is close, that the judge should err on the side of allowing that evidence to be heard, because the jury will resolve any problems, any credibility issues regarding it. Also, as to the corroboration, that the corroboration needed to corroborate the proposed confession or proposed statements, there only needs to be a little bit of evidence to corroborate it, and it only needs to corroborate that proposed confession. It need not corroborate other evidence in the case. It need not all be wrapped up in a neat package for the jury to work those out. Regarding the sua sponte second-degree instructions, no court has sanctioned the sua sponte imposition of second-degree murder instructions in a case in which the defendant has not already put forth a defense of self-defense. Sidney did not put forth a defense of self-defense. The trial judge taking it upon himself to take the issue of whether Sidney stabbed Danny Santoyo at all, he took that away from the jury when he instructed them on second-degree murder. Given that that was a completely, that those instructions were completely at odds with the defense that was advanced, those instructions could only have confused the jury and caused the conviction in this case. All the remaining issues, I'll stand on my briefs. Thank you very much. Thank you, Counsel. This matter will be taken under advisement. This court is adjourned.